IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 29, 2020

## STATE OF TENNESSEE v. CHAD JEREMY KILGORE

**Appeal from the Circuit Court for Blount County**
**No. C-24682     Tammy M. Harrington, Judge**

_____

### No. E2019-00981-CCA-R3-CD

_____

The Defendant, Chad Jeremy Kilgore, appeals the trial court's order imposing confinement after finding a violation of his probation. In December 2016, the Defendant pleaded guilty to two counts of forgery of over $1,000 in exchange for an effective three-year sentence, suspended, and the trial court placed him on probation for two years and eleven months. In February 2019, a probation violation warrant, the Defendant's third, was issued alleging multiple violations, including a new arrest. After a hearing, the trial court revoked the Defendant's probation, ordering him to serve the balance of his sentence in confinement. On appeal, the Defendant asserts that the trial court abused its discretion when it revoked his probation and when it ordered him to confinement. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Raymond Mack Garner, District Public Defender; Shawn G. Graham, Assistant District Public Defender (at hearing); Joseph Liddell Kirk (on appeal), Knoxville, Tennessee, for the appellant, Chad Jeremy Kilgore.

Herbert H. Slatery III, Attorney General and Reporter; Reneee W. Turner, Senior Assistant Attorney General; Michael L. Flynn, District Attorney General; and Tracy T. Jenkins, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

On December 9, 2016, the Defendant pleaded guilty plea to two counts of forgery of over $1,000, a Class D felony. The trial court sentenced the Defendant to serve three

years, suspended, and he was placed on probation for two years and eleven months. On February 14, 2019, the Defendant's probation officer filed an affidavit alleging that the Defendant had violated his probation by being arrested and failing to report that arrest. According to the affidavit, on March 13, 2017, the Defendant's probation had been revoked for new charges of domestic assault and possession of a controlled substance. He served 100 days and was reinstated to probation. His probation was transferred to Marion County. On January 12, 2018, the Defendant's probation was again revoked for failing a drug screen by testing positive for methamphetamine. The trial court ordered him to serve eleven months and then reinstated his probation for the balance of his sentence. The Defendant was released on April 7, 2018, and his probation was transferred to Hamilton County. The Defendant failed to report in January 2019, and, on January 29, 2019, he was arrested for possession of drug paraphernalia, contraband in a penal facility, criminal trespass, leaving the scene of an accident, and vandalism. Based on this affidavit, the trial court issued a warrant for his arrest, and he was arrested on February 25, 2019.

At the probation violation hearing, the parties presented the following evidence: Joshua Litchfield testified that he is employed at the Tennessee Valley Authority ("TVA") and that he came into contact with the Defendant on January 23, 2019. On that date, he was dispatched to the Sequoyah Nuclear Plant to respond to a report that someone had passed the primary entry gate and then rammed another gate before leaving the area. Officer Litchfield noted that, leading toward the gate, there was a sign which indicated that the area was restricted and the public denied access.

Officer Litchfield testified that, before arriving at the gate, he was informed that Hamilton County Sheriff's Department officers had stopped a vehicle matching a description of the one that had rammed the gate. When he arrived, he saw the Defendant, whom he heard tell officers that he had "blacked out" and awoken when he had hit the fence. The Defendant said that he then left the area because he was scared. The Defendant's vehicle was at that time located between one-half and three-quarters of a mile from the gate.

Officer Litchfield said that when the Defendant's vehicle hit the fence, it destroyed that area of fencing. It also hit a Polaris ATV and a dumpster, both of which were TVA property. Officer Litchfield said he believed that the Defendant had been charged with leaving the scene of an accident, trespass, damage to property, and vandalism. Sherriff's deputies transported the Defendant to a detention facility, where he was searched for booking. Officers found a glass pipe, which appeared to be drug paraphernalia, on his person.

During cross-examination, Officer Litchfield clarified that he did not arrive at the jail until after the Defendant was searched. He believed that officers found the pipe in the Defendant's shirt pocket.

Tim Hickey, the Defendant's probation officer, testified that he began supervising the Defendant in November 2018 after the Defendant's probation was transferred to Hamilton County sometime in April 2018. He said that the Defendant was charged on January 29, 2019, with possession of drug paraphernalia, contraband in a penal facility, criminal trespass, leaving the scene of an accident, and vandalism. The Defendant did not report the charges to Mr. Hickey. A few days after the arrest, Mr. Hickey learned of the charges from a Hamilton County Sheriff's Department booking report. The report indicated that the Defendant was released on bond from jail.

Mr. Hickey testified that the Defendant reported on February 25, 2019. At that time, the Defendant put on his monthly report that he had been involved in an accident on TVA property. Mr. Hickey said that he informed the Defendant that there was a probation violation warrant for his arrest and that he was going to be arrested. This concluded his interactions with the Defendant.

During cross-examination, Mr. Hickey testified that the Defendant was on "medium supervision," meaning that he was required to report every three months. The Defendant had reported to a different probation officer in October 2018, and the February appointment was his first time reporting to Mr. Hickey. Mr. Hickey said he was unsure whether the Defendant contacted his previous officer to report his arrest. Mr. Hickey personally contacted the Defendant to schedule the February 25, 2019 reporting date. He agreed that he had already filed the warrant for the Defendant's arrest by the time the Defendant reported.

During redirect examination, Mr. Hickey testified that he verified in the case management system that no one at the probation department had documented that the Defendant had called in to report his new charges. Mr. Hickey clarified that he attempted to contact the Defendant in January and February, and the Defendant finally called him back a few days before February 25, 2019, but after the probation violation warrant had already been filed. When the two spoke on the phone, the Defendant did not mention his additional charges.

The Defendant testified that he lived at his mother's house before being arrested. The Defendant said that, after his arrest, he was sent to another office in Chattanooga, separate from his state probation office to discuss his requirements while on bond. He said that he asked them to contact his state probation officer and let him know that he had new charges. He clarified that, at the time, he did not know the name of his new

probation officer. The Defendant agreed that he did not personally contact state probation. He agreed that he should have called state probation to report his arrest and subsequent charges. The Defendant noted that he had been clean and had obtained steady employment with two different employers. He said that he did not want to "slip up." He asked that the trial court grant him probation.

During cross-examination, the Defendant testified that he had previously violated his probation. He agreed that his original conviction was for two counts of forgery, and he pleaded guilty in December 2016. He was given twenty-four days of jail credit and sentenced to probation. In January 2017, he was charged with domestic assault and possession of heroin and methamphetamine. He admitted to that violation and the trial court sentenced him to a 100-day split confinement and released him back to probation. He was ordered to undergo a drug and alcohol assessment. He agreed that, shortly after the 100-day confinement, he tested positive for methamphetamine, resulting in another probation violation warrant. For that violation, the trial court sentenced him to eleven months of split confinement and ordered him back to probation. He was returned to probation in April of 2018 before being arrested in this case.

The Defendant explained that, while he made bond on these charges and was not in custody, he was reporting to pretrial supervision as required. The Defendant agreed that his "ex" had also recently sought a warrant for his arrest for the aggravated burglary of her home. He said, however, that he was not guilty of that charge.

After hearing the evidence, the trial court found:

> [The Defendant] was arrested and charged in Hamilton County with possession of drug paraphernalia, contraband in a penal facility, criminal trespass, leaving the scene of an accident, and vandalism. The Court has heard from the TVA officer as to the circumstances of that case. I've reviewed the exhibits. And this is not whether or not he committed those offenses beyond a reasonable doubt. The standard is much different. It's a much lower threshold. And so the State did not just put on proof of pending charges through certified copies. They actually put on proof to put the Court in a different position to where I could make findings as to preponderance of the evidence in those cases. And then as far as will report arrests, including traffic violations, to probation, and he did not do that. That's fairly uncontroverted from the proof here today. So based upon those two issues I do find that he has violated the terms and conditions of his probation as set out in the warrant for those reasons.

- 4 -

And then looking at his history, it would appear that [the Defendant] went on probation December the 9th of 2016. At that time he received a 22-day split confinement. I would assume he was released the day of his plea with that pretrial jail credit.

He then had a violation filed January 30th, 2017, less than 60 days later. That violation – the first violation was he was charged and arrested in Chattanooga for domestic assault and possession of a controlled substance, failed to provide proof of employment, failed to report as directed, was in possession of illegal substances and had failed to make court cost payments. The disposition on that occurred March 13th, 2017. And he received a 100-day split confinement and was once again returned to supervised probation.

A few short months later, August 1st, 2017, he was violated again for testing positive on July 10th, 2017, for methamphetamine. The disposition on that violation was 11 months. And that disposition occurred, looks like, January 12th, maybe 2018. And then he received this violation on February 14th.

So he has served a 22-day, a 100-day, and an 11-month split coming into what is now his third violation. While this three-year sentence has been pending – I did some math and he has spent more time in custody than out of custody being supervised. And that's with . . . only coming in every three months. I mean, how hard is that, you know? I mean we have people that report weekly, monthly, and you know . . . just to report once every three months . . . .

So, the history is bad of his history on supervised probation. He has pending charges in Hamilton County. Obviously the aggravated burglary charges, they're not really an issue here because it's not part of the violation and those are just pending charges. But given his history and the facts and circumstances as proven by the State as part of this hearing the Court is going to revoke him to serve the balance of his sentence.

It is from this judgment the Defendant now appeals.

## II. Analysis

On appeal, the Defendant argues that the trial court abused its discretion when it revoked his probation and when it ordered him to serve the balance of his sentence in

confinement. The State responds that the trial court acted within its discretion when, after determining that the Defendant had violated the terms of his probation, it revoked the probation sentence and ordered him to serve the remainder of his sentence. We agree with the State.

A trial court's authority to revoke a suspended sentence is derived from Tennessee Code Annotated section 40-35-310 (2014), which provides that the trial court possesses the power "at any time within the maximum time which was directed and ordered by the court for such suspension, . . . to revoke . . . such suspension" and cause the original judgment to be put into effect. A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2014). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If a trial court revokes a defendant's probation, options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c), -310 (2014); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999).

The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Smith*, 909 S.W.2d 471, 473 (Tenn. Crim. App. 1995). In order for this Court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Shaffer*, 45 S.W.3d at 554. Further, a finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Id.* at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

The record in this case provided substantial evidence to support the trial court's revocation of probation. First, the Defendant admitted to the violations. The Defendant's admission to a violation has itself been held to be "substantial evidence" that the violation took place. *State v. Glendall D. Verner*, No. M2014-02339-CCA-R3-CD, 2016 WL 3192819, at *7 (Tenn. Crim. App., at Nashville, May 31, 2016), *perm. app. denied* (Tenn. Sept. 30, 2016) (citing *State v. Yvonne Burnette*, No. 03C01-9608-CR-00314, 1997 WL 414979, at *2 (Tenn. Crim. App., at Knoxville, July 25, 1997); *see State v. Zantuan A. Horton*, No. M2014-02541-CCA-R3-CD, 2015 WL 4536265, at *3 (Tenn. Crim. App., at Nashville, July 28, 2015), *no perm. app filed* (stating that a defendant who admitted violating the terms of his probation conceded an adequate basis for finding of a violation); *State v. Gordon Herman Braden, III*, No. M2014-01402-CCA-R3-CD, 2015 WL 2445994, at *2 (Tenn. Crim. App., at Nashville, May 22, 2015), *no perm. app filed* ;

*State v. Neal Levone Armour*, No. E2003-02907-CCA-R3-CD, 2004 WL 2008168, at *1 (Tenn. Crim. App., at Knoxville, Sept. 9, 2004), *no perm. app filed* ("Essentially, then, the defendant conceded an adequate basis for a finding that he had violated the terms of probation.").

After the trial court found that the Defendant had violated the terms of his probation, it retained discretionary authority, pursuant to Tennessee Code Annotated section 40-35-310(b), to order the Defendant to serve his sentence in incarceration. The determination of the proper consequence of a probation violation embodies a separate exercise of discretion. *State v. Hunter*, 1 S.W.3d 643, 647 (Tenn. 1999). Case law establishes that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App., at Nashville, Feb. 10, 1999), *perm. app. denied* (Tenn. June 28, 1999).

We conclude that the trial court did not abuse its discretion when it found that the Defendant had violated his probation. The Defendant's probation required that he report all arrests and new charges to his probation officer. He admitted that he did not contact state probation and inform them of his arrests. The trial court did not abuse its discretion when it revoked the Defendant's probation.

Further, we conclude that the trial court did not abuse its discretion when it ordered the Defendant to serve the balance of his sentence in confinement. This was the Defendant's third violation of his probation for this sentence. The Defendant had previously been confined for increasing durations in the previous two violations. The trial court did not abuse its discretion when it determined that the Defendant should serve the balance of his sentence in confinement.

Accordingly, we conclude that the trial court correctly found that the Defendant had violated the terms of his probation sentence and then, in its discretion, properly determined the consequence of the violation. Therefore, the Defendant is not entitled to relief.

## III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE